PEOPLE, *for use of* SAUER, *v.* CONNELL.

1. SCHOOLS AND SCHOOL DISTRICTS—PUBLIC WORKS—CONTRACTS—SUBCONTRACTORS.

Where plaintiffs agreed to and did manufacture the interior finish for a school house in conformity with the plans and specifications of the architects, they were subcontractors.

2. SAME — PUBLIC WORKS — BONDS — NOTICE — SUFFICIENCY — STATUTES.

In a suit upon a bond given by a contractor to a school board for the protection of subcontractors and laborers upon a school house under the provisions of section 2, Act No. 187, Pub. Acts 1905 (3 Comp. Laws 1915, § 14827), where plaintiffs, subcontractors, notified the school board by letter that they had contracted to furnish certain material, part of which had been delivered, stating the amount due them, said notice was a sufficient compliance with the act, in view of the fact that the contract had been so modified that payment could be made by the school board direct to the materialmen and laborers; and it was unnecessary for plaintiffs to notify the board that they relied on the bond, or to notify the principal contractor that this notice had been given to the board, as required by the act, since these requirements were to enable the officials to withhold funds sufficient to pay the subcontractor and to give notice thereof to the contractor so that he would not attempt to overdraw his account.[1]

[1] On right of subcontractor, materialman, or laborer to maintain action on bond taken for benefit of public, see note in 49 L. R. A. (N. S.) 1175.

Error to Wayne; Davis, J., presiding. Submitted

June 16, 1916.    (Docket No. 108.)    Decided March 29, 1917.

Assumpsit by Charles A. Sauer and Adam Sauer, copartners as C. A. Sauer & Company, in the name of the people of the State of Michigan, against Edward A. Connell, principal, and the Massachusetts Bonding & Insurance Company, surety, on a surety bond. Judgment for plaintiffs. Defendants bring error. Affirmed.

*Monaghan & Monaghan*, for appellants.

*Henry B. Graves*, for appellees.

BIRD, J. Defendant Edward A. Connell entered into a contract with the board of education of the city of Detroit on the 6th day of November, 1911, to construct a school building to be known as the "Caroline Crossman School," for the consideration of $77,281. The building was to be erected in accordance with the plans and specifications drawn by Malcomson & Higginbotham, architects. At the time the contract was executed, the board demanded and received from Connell a bond in compliance with Act No. 187, Pub. Acts 1905 (3 Comp. Laws 1915, § 14827). The bond was in the penal sum of $77,281, with defendant Massachusetts Bonding & Insurance Company as surety. After this contract had been executed, and on the 24th day of January, 1912, defendant Connell entered into a contract with plaintiffs to furnish certain interior finish, which Connell was obliged to furnish under his contract, for the consideration of $4,958. Connell proceeded with the work until November 14, 1912, when the contract was modified by consent of all parties, including the surety, so that payment could be made by the board of education direct to the materialmen and laborers. At the date of modification, Connell was indebted to the plaintiffs in the sum of $1,000, and Connell had received on his contract $31,-585.28. After the modification, the board paid out directly to materialmen and laborers $47,429.43. A settlement of the original contract took place between the board and Connell on January 22, 1914, and it

was found that the board had paid out $847.71 in excess of the contract price. Later and in the year 1915, Connell was allowed a bill for extras of $4,-633.74. After deducting the previous overpayment and certain other amounts on account of unfinished work, he was paid the sum of $3,043.53. The $1,000 which was owing to plaintiffs prior to the modification of the contract being still unpaid, this suit was brought to recover the amount together with the interest thereon. The defendants offered no testimony, but requested a directed verdict. This request was denied, and a verdict was directed in accordance with plaintiffs' demand. Defendant surety company alone has appealed. Its counsel argue two questions:

(1) That the trial court was right in holding that plaintiffs were subcontractors.

(2) That the trial court was in error in holding that any recovery could be had because plaintiffs neglected to give the notice required by section 2 of said act.

1. The rule which appears to have been laid down by this court to determine in any given case whether one is a subcontractor or a materialman is as follows:

"Has he agreed that the original contract shall be the standard by which the performance of his contract shall be judged?" *People* v. *Campfield,* 150 Mich. 675 (114 N. W. 659).

The entire agreement between plaintiffs and Connell does not appear in the record, due probably to the fact that Chas. A. Sauer died a few days before the trial; but we think a fair inference may be drawn from the testimony that plaintiffs agreed to and did manufacture the interior finish in conformity with the plans and specifications of the architects. We therefore conclude that the trial court was right in holding that the plaintiffs were "subcontractors."

2. Counsel's second and principal contention is that

no recovery can be had against the defendant surety company because section 2 of Act No. 187, Pub. Acts 1905 (3 Comp. Laws 1915, § 14828), was not complied with in giving the notice therein required. The material portion of the section provides that:

"In the case of a subcontractor, he shall give notice in writing before payment is made for the work or materials furnished by him, to the said board of officers or agents, that he is a subcontractor for the doing of some part of such work which he shall specify in his notice and that he relies upon the security of the bond by this act required to be given by the principal contractor, and that in the case of the giving of such notice to the said board of officers or agents said subcontractor shall also notify the principal contractor that he has done so, and whenever this shall have been done, the said subcontractor shall be entitled, subject to the rights of the persons with whom he has contracted for labor and materials, to the benefit of the security given by the principal contractor."

The essentials of this section are:

(a) That the subcontractor shall give notice to the officials that he has entered into a contract with the principal contractor to do some part of the work.

(b) That he shall give such notice in writing before the principal contractor shall be paid for the work and materials so furnished by him.

(c) That he relies upon the security of the bond.

(d) That he shall notify the principal contractor that he has given this notice to the officials.

It is conceded that no formal notice embracing these essentials was given by the plaintiffs, but it is claimed that a letter written by them to the board of education in October, 1912, just prior to the modification of the contract, was a substantial compliance with this section. The letter follows:

"We beg to advise you that on January 25th, 12, we entered into a contract with Mr. E. A. Connell, contractor for the Crossman School Bldg., to furnish material as enumerated on the enclosed copy of our

contract. We have made delivery of upwards of $2,-
000.00 of this material upon which we have received
$1,000.00, leaving a balance of $1,000.00 due. We
also have all material manufactured ready for ship-
ment awaiting instructions. In the event that the
contract for balance of work on this building is taken
out of Mr. Connell's control we would appreciate it
very much to have you advise us. Thanking you for
your consideration, we are,  *   *   *."

We think the notice contained in this letter was a
full compliance with essential *"a"* and a reasonable
compliance with essential *"b."* When the letter was
written, less than half of the contract price had been
paid to the contractor, and the major part of the in-
terior finish had not yet been delivered to the con-
tractor in Detroit. The letter does not, however, sat-
isfy the essentials *"c"* and *"d."* So far as the reasons
are apparent for inserting these requirements, they
were to enable the officials to withhold funds sufficient
to pay the subcontractor and to give notice thereof
to the contractor so that he would not attempt to over-
draw his account which should accrue from time to
time upon estimates. If this be the proper view, we
can see no reason for complying with essentials *"c"*
and *"d,"* because the board had taken into its own
hands the whole matter of making disbursements to
materialmen, laborers, and subcontractors.

Having in mind the very liberal construction which
this court has given the statute (*People* v. *Traves,* 188
Mich. 415 [154 N. W. 120]), we are constrained to
hold that this letter is a substantial compliance with
section 2. The case of *People* v. *Finn,* 162 Mich. 481
(127 N. W. 704), is urged upon our attention as being
opposed to this view; but we think the cases are dis-
tinguishable. In the *Finn Case* no notice at all was
served. In this case a somewhat belated notice was
served; but defendant surety company has not made

195 Mich.—6.

it appear that it has been injured thereby, consequently it has no ground for complaint. *People* v. *Bowen*, 187 Mich. 257 (153 N. W. 672); *People* v. *Traves*, 188 Mich. 345 (154 N. W. 130).

The judgment of the trial court will be affirmed.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.